IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 17-03532 (ESL) |
| ANGEL LUIS CLAUDIO DÍAZ | CHAPTER 7 |
| Debtor | |
| BANCO POPULAR DE PUERTO RICO | |
| Plaintiff | |
| vs. | ADV. PROC. NO.  19-00430 (ESL) |
| ANGEL LUIS CLAUDIO DIAZ;
WIGBERTO LUGO MENDER (Trustee) | |
| Defendant | |

OPINION AND ORDER

This adversary proceeding is before the court upon the *Motion for Summary Judgment* filed by Angel Luis Claudio Díaz ("Debtor" or "Defendant") on the grounds that as of the date of the filing of the Debtor's bankruptcy petition, the Plaintiff did not have a valid registered lien on Debtor's real property. The Debtor argues that the recordation was performed on another property number. The Debtor/Defendant contends that once he filed his bankruptcy petition, the automatic stay and subsequently, the discharge order prevented the recording of the mortgage deed in the registry. The Defendant further argues that the post-discharge recording of a mortgage lien on the property is an invalid action by the Property Registrar, and since the same was procured by the Plaintiff, such action is a violation of the discharge injunction. (Docket No. 49). Banco Popular de Puerto Rico (hereinafter referred to as "BPPR" or "Plaintiff") filed a *Motion for Summary Judgment* asserting that the real estate property owned by the Defendant and that served as collateral to the loan was subject to a valid mortgage lien as evidenced by the mortgage, and which conferred BPPR status as a secured creditor on the filing date. (Docket No. 50, pg. 3). BPPR argues that Defendant's allegation that "the receipt ("asiento de presentación") of the mortgage was mistakenly presented as a lien over property #52,552, and not on Debtor's property #52,829, is not based on the official receipt provided by the Registry. The claim is based solely

on two Spanish language private title studies dated May 19, 2017 and September 1, 2017. There is nothing else on the record to prove Defendant's claim that the receipt or the entry had an error. There is also no evidence on the record that the Registrar made an error recording the mortgage following Law 216. (Docket No. 50, pg. 24). BPPR's position is that a Registry certification pursuant to 30 L.P.R.A. §§2105 and 2106 is required by the Defendant to validate its claim that BPPR's mortgage lien had been presented (and recorded) under another property number at the time of Debtor's bankruptcy filing. The Debtor's failure to submit evidence of a certification from the Property Registrar evincing the inexistence of a valid mortgage lien against the Debtor's property as of the date of the bankruptcy petition, and BPPR's certification issued by the Property Registrar showing the mortgage as a lien over the property, establish a presumption of valid recordation pursuant to Law 216. On June 30, 2021, the Defendant filed its *Reply to Banco Popular de Puerto Rico's Motion for Summary Judgment* (Docket No. 51) and on the same date BPPR filed its *Motion in Opposition to Defendant's Motion for Summary Judgment* (Docket No. 52). For the reasons stated herein, the Defendant's Motion for Summary Judgment is denied, and the Plaintiff's Motion for Summary Judgment is granted.

Jurisdiction

This court has jurisdiction under 28 U.S.C.§§ 1334(b) and 157(a). This action is a core proceeding pursuant to 28 U.S.C. §§157(b)(1) and (b)(2)(A), (I), (J) and (K). Venue lies in this District pursuant to 28 U.S.C.§§1408 and 1409.

Facts and Procedural Background

The Debtor filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code on May 19, 2017 (Lead Case No. 17-03532, Docket No. 1). The Debtor included in Schedule A/B: Property the real estate property located at Bo. San Salvador Sec. Los Rosales Carr. 765 Caguas, PR, 00725, with a current value of the entire property in the amount of $100,000.00 and disclosed that he owned $100,000.00 of the current value of the real estate property. The Debtor in its Schedule C: The Property You Claim as Exempt included its real estate property located at Bo. San Salvador Sec. Los Rosales Carr. 765 Caguas, PR, 00725, which its current value was disclosed at $100,000.00 and the Debtor claimed exempt the amount of $100,000.00 pursuant to 31 L.P.R.A. §§385(a), 1851-1857. The Debtor included in Schedule E/F: Creditors Who Have Unsecured Claims creditor BPPR with an unsecured claim in the amount of $97,590.37 and disclosing that the unsecured claim was a previous mortgage note that was refinanced and the mortgage note was not duly registered at the property registry. On June 28, 2017 the 341 meeting

of creditors was held. The Chapter 7 Trustee's Report after Meeting of Creditors discloses that no creditors were present at the 341 meeting. (Lead Case No. 17-03532, Docket No. 8).

On July 18, 2017, BPPR filed a *Motion for Relief from Stay* pursuant to 11 U.S.C. §362(d)(1), (2). (Lead Case No. 17-03532, Docket No. 10). On July 31, 2017, the Debtor filed his Response to Motion for Relief from Stay filed by Banco Popular de Puerto Rico, Docket 10 in which he argued that (i) BPPR did not have standing to request relief from the automatic stay because it had not filed a proof of claim; and (ii) from the exhibits filed by BPPR it appears that the mortgage deed has not been presented and/or registered at the Puerto Rico Property Registry (Lead Case No. 17-03532, Docket No. 14). BPPR filed as an exhibit a title study dated June 22, 2017 in the Spanish language performed by Bermudez Diaz & Sanchez LLP on property number 52,829 that did not disclose that BPPR's mortgage had been presented or registered on this property. The title study included the homestead act that the Debtor had presented to the Property Registrar on May 18, 2017 (Lead Case No. 17-03532, Docket No. 10, pgs. 40-41). On August 15, 2017, a hearing on the motion for relief from stay was held and the Court ordered that: "(1) For the reasons stated in open court, the court concludes that BPPR has standing as it was included in the schedules, the notice by the Clerk indicated that POC will not be filed, and BPPR is financially aggrieved. (2) BPPR is granted 14 days to move the court detailing facts which lend support to allegation that it is a secured creditor. (3) Debtor is granted 14 days thereafter to oppose and/or state his position." (Lead Case No. 17-03532, Docket No. 15).

On August 29, 2017, the Debtor filed a *Motion in Compliance with Court Order (Docket No. 15)* stating that an updated title study dated August 18, 2017 reflects that the mortgage loan is recorded at page 263 overleaf of volume 1145 of the Caguas Property Registry, property number 52,829 pursuant to Puerto Rico Law No. 216 signed on November 25, 2008 (Lead Case No. 17-03532, Docket No. 18). The title study submitted in the Spanish language by BPPR was performed by Bermudez Diaz & Sanchez LLP as to parcel #52,829. The title study discloses that BPPR's mortgage deed was presented to the Property Registry on December 23, 2008 and the same was registered pursuant to Law 216 of December 27, 2010. It also disclosed that the mortgage deed appears in the binnacle under property #52,552 ("Aparece en bitácora bajo el número de finca 52,552"). This was the fourth inscription under the liens segment for property number 52,829. The fifth inscription was a cancellation of mortgage that had been presented to the Property Registrar on June 29, 2009 and the same had been recorded pursuant to Law 216 of December 27, 2010. The sixth inscription was the Homestead Protection Act that had been

presented to the Property Registrar on May 18, 2017 and was pending recordation. On September 12, 2017 the Debtor filed a *Motion in Compliance with Order, Docket #15 Re: Debtor's Opposition to Banco Popular de Puerto Rico's Compliance with Court Order (Docket #15)* by which the Debtor argued that the Debtor conducted an appropriate investigation at the Property Registry and found that BPPR's mortgage deed #729 signed on November 25, 2008 was presented and recorded at property #52,552, not on Debtor's property #52,829. Attached was a copy of a title study dated September 1, 2017 disclosing that the mortgage deed #729 was presented and recorded at property #52,552, not at property #52,829. Debtor/Defendant alleges that BPPR has no valid security interest because mortgage deed #729 has not been presented and/or recorded at the Puerto Rico Property Registry under debtor's property #52,829. Therefore, this recordation does not comply with the specificity requirement that requires specificity as to the property ("finca") and its owners ("titulares"). The Debtor in the prayer of its motion requested the court to deny BPPR's motion for relief from the automatic stay. (Lead Case No. 17-03532, Docket No. 22). On October 11, 2017, the court granted Debtor's motion in compliance with Order and requesting that the motion for relief from the automatic stay filed by Banco Popular de PR be denied (docket #22). (Lead Case No. 17-03521, Docket No. 24).

On November 7, 2017 a discharge under 11 U.S.C. §727 was granted to Debtor (Lead Case No. 17-03532, Docket No. 27). On March 21, 2018, the Chapter 7 Trustee gave notice that there are assets, or it is expected for there to be assets in this case which are expected to result in a dividend to creditors. (Lead Case No. 17-03532, Docket No. 29). On March 26, 2018, the Notice of Need to File Proof of Claim due to Recovery of Assets was docketed (Lead Case No. 17-03532, Docket No. 30). On May 17, 2019, the Chapter 7 Trustee filed a *Notice of Abandonment of Property* whereby he informed that he was going to abandon the Debtor's real estate property pursuant to 11 U.S.C. §554. (Lead Case No. 17-03532, Docket No. 40).

Thereafter, on October 2, 2019 the instant adversary proceeding was filed by BPPR seeking a declaratory judgment pursuant to 11 U.S.C. §523(a)(2)(B)(i), (iii) and (iv) that movant has a valid lien over Debtor's property. BPPR asserts in its complaint and "on the authority of the Property Registry's public and official records, an error made by an officer of the Property Registry when entering information in the [Bitacora] does not affect the validity of the presentation entry and therefore, does not affect the perfected pre-petition lien that encumbers Debtor's property (Docket No. 1). BPPR in its complaint alleges that: (i) mortgage deed no. 729 was deemed recorded as a matter of law, since December 23, 2008, and the entry made by the

Registrar on June 14, 2018 made emphasis of the same; (ii) it had a pre-petition lien over Debtor's real estate property which was restated by the Property Registrar through its seventh abbreviated entry under property number 52,589; (iii) the Registrar's *sua sponte* actions cannot be considered a violation of the automatic stay since the Registrar is not bound by the automatic stay; (iv) the error made by the Registry's officers when making the entry of presentation for filing of mortgage deed number 729 in the matrix property [Bitacora] was corrected by the Registrar's actions when passing judgment on the legality of mortgage deed number 729; and (v) "[t]o claim the unsecured nature of movant's claim, Debtor relied on documents that constitute hearsay and cannot be relied upon as they are inadmissible as evidence pursuant to Rule 801 of the Federal Rules of Evidence, since they were prepared by title investigators, and also since they are in clear violation of 48 USC §864, LBR 9070-1(c) and L. Civ. R. 5(g) having been filed in their original Spanish language and no certified translation been submitted." (Docket No. 1, pgs. 13 & 15).

On October 19, 2019, the court scheduled a pretrial for January 24, 2020 (Docket No. 14). On October 28, 2019, the Defendant filed a *Motion for Extension of Time to Answer Complaint* and the same was granted on October 29, 2019 (Docket Nos. 19 & 20). On November 25, 2019, the Defendant filed his *Answer to the Complaint* (Docket No. 22). On January 15, 2020, the parties filed a *Joint Motion for Continuance of Preliminary Pretrial and Scheduling Conference set for January 24, 2020* and the court granted the same on January 16, 2020 and rescheduled the preliminary pretrial for March 27, 2020 (Docket Nos. 23 & 24). On March 6, 2020, the parties filed an *Initial Scheduling Conference Report and Request to Vacate and Set Aside Hearing Scheduled for March 27, 2020* and the same was granted and the pretrial was continued to July 17, 2020 (Docket Nos. 26 & 27). On May 5, 2020, the parties filed a *Joint Motion for Modification of Initial Scheduling Conference Report* to revise the discovery plan and continue the pretrial hearing for a later date after August 8, 2020 and the court granted the same and continued the pretrial without a date. (Docket Nos. 32 & 33).

On August 5, 2020, the Defendant filed an *Informative Motion Regarding the Status of the Case* requesting the court to order the parties to submit a pre-trial report and schedule a trial hearing (Docket No. 35). On August 13, 2020, the court granted Defendant's Informative Motion and scheduled a pretrial for November 13, 2020. (Docket No. 36). On November 2, 2020, the Defendant filed a *Motion to Request Continuance of the Pre-Trial Hearing Scheduled for November 13, 2020* and the court granted the same and continued the pre-trial for February 19, 2021. (Docket Nos. 38 & 39). On January 22, 2021, the court docketed an *Order and Notice*

continuing the pre-trial hearing for April 30, 2021. (Docket No. 41). On April 26, 2021, the parties filed the *Joint Pre-Trial Report* (Docket No. 45).

On April 30, 2021, the pre-trial hearing was held, and the minutes reflect that according to the Plaintiff the essence of the controversy is whether a Property Registrar may correct a mistake in the documents presented. Debtor relied on a private title search not on original documents. Mistake is in property number. According to the Defendant the matter was presented in a 362 motion. The Debtor was granted a Chapter 7 discharge. BPPR was scheduled as an unsecured creditor. Correction was made post-petition.  The court held the following: "The court concludes that a hearing on a motion to lift the stay is limited in scope and is a summary proceeding to determine if movant has a colorable claim over property of the estate and is not a determination of substantive rights. In re Grella, 42 F. 3d. 26, 30 (1st Cir. 1994); In re Old Cold, 602 B.R. 798, 825 (1st Cir. BAP 2019); In re Nelson, 621 B.R. 542, 555 (1st Cir. BAP 2020). The parties were granted thirty (30) days to file dispositive motions and replies were due thirty (30) days thereafter. The pre-trial hearing was continued without a date. (Docket No. 47).

On May 31, 2021, the Defendant filed a *Motion for Summary Judgment* (Docket No. 49). Also, on May 31, 2021, BPPR filed a *Motion for Summary Judgment* (Docket No. 50). On June 30, 2021, the Defendant filed his *Reply to BPPR's Motion for Summary Judgment* (Docket No. 51). On June 30, 2021, BPPR filed a *Motion in Opposition to Defendant's Motion for Summary Judgment* (Docket No. 52).

In addition to the legal issues argued by the parties, the court will address whether the Debtor was required to take legal action to avoid a security interest in the debtor's property during the bankruptcy process and file an adversary proceeding pursuant to Fed. R. Bankr. P. 7001(2) to determine the extent, validity, and priority of BPPR's lien on its real property, and the effect of not taking said legal action on whether the Debtor's real estate property will remain subject to the security interest/lien after the Debtor's discharge pursuant to 11 U.S.C. §727.

The parties agree as to the following uncontested material facts (Docket Nos. 45, 49 & 50):

<u>Material Uncontested Facts</u>

1.  On August 18, 2005, the Debtor acquired ownership of a property for the price of $35,000 pursuant to the Vesting Deed.

2.  The legal description of the property acquired by the Debtor is:

"RUSTIC. SAN SALVADOR WARD in Caguas. Plot: 3. Surface Area: 1,488 Square Meters. Boundaries: North, at a distance of 76.6893 meters, according to the plan with the Estate of Felipe Flores. On the South, with a road dedicated to Public Use, with a distance of 79.5919 meters. On the East, with the remainder of the main land plot, with a distance of 57.6532 meters. On the West, with Property number 2, at a distance of 51,0808 meters. Located in San Salvador Ward. It is a segregation of Lot 25100 at Page 266 of Volume 770 in Caguas, approved by Plan number 2386."

3.   The Property was identified with the number 52,829 and recorded on page 160, volume 1552 of the Puerto Rico Property Registry, Caguas I.

4.   The Vesting Deed was recorded and abbreviated entry no. 2 of property number 52,829 in the Puerto Rio Registry of the Property, Caguas I. The recordation was made pursuant to the Law to Streamline Property Registration of the year 2010.

5.   On August 18, 2005, the Debtor obtained a loan from Doral Financial Corporation d/b/a HF Mortgage Bankers (the "Original Lender") in the amount of $94,833.00 with a yearly interest of 6.95%.

6.   To guarantee payment of the amount owed, the Debtor constituted a mortgage over the property through the mortgage deed no. 135 before notary public Diomary Laboy Rivera.

7.   Mortgage Deed No. 135 was recorded as abbreviated entry no. 3 of property no. 52,829, in the Puerto Rico Property Registry of the Property, Caguas I. The recordation was made pursuant to the Law to Streamline Property Registration of the year 2010.

8.   On August 3, 2006, the Original Lender modified mortgage deed no. 135 pursuant to the terms and conditions described in Public Deed No. 21, executed before Notary Public Félix Y. Bravo Rosario. Specifically, the parties agreed to modify the monthly installment payments of the mortgage note as well as to extend its maturity date.

9.   Public Deed No. 21 was recorded as abbreviated entry no. 4 of property no. 52,829 in the Puerto Rico Property Registry, Caguas I. The recordation was made pursuant to the Law to Streamline Property Registration of the year 2010.

10. On May 28, 2009, the Original Lender released mortgage deed no. 135 of property no. 52,829 at the Puerto Rico Property Registry, Caguas I, by means of Public Deed No. 1201 before Notary Public Luis A. Archilla Díaz. The recordation was made pursuant to the Law to Streamline Property Registration of the year 2010.

11. Public Deed No. 1201 was recorded as abbreviated entry no. 5 of property no. 52,829

at the Puerto Rico Property Registry, Caguas I. The recordation was made pursuant to the Law to Streamline Property Registration of the year 2010.

12. On November 25, 2008, Debtor and co-Debtor, Angel Claudio De Jesús and Estebania Díaz Díaz (jointly referred to as "co-debtors") obtained a loan from Doral Mortgage, LLC ("Lender") in the amount of $111,568.00 with a yearly interest of 5 ½%.

13. On November 25, 2008, to evidence the amount owed to the Lender, co-debtors executed a Mortgage Note payable to Doral Mortgage, LLC or to its holder under Affidavit No. 3779 of Notary Public Luis E. Mejías Rivera.

14. On November 25, 2008, co-debtors and Doral Mortgage, LLC subscribed before Notary Public Luis E. Mejías Rivera, the Deed of Mortgage Number 729, which at Section Second indicated that to evidence the loan obtained from Doral Mortgage, LLC, co-debtors executed a Mortgage Note payable to Doral Mortgage, LLC or to its holder under Affidavit No. 3779 of Notary Public Luis E. Mejías Rivera. Further, at Section Third, the Deed of Mortgage it was stated that to guarantee the payment of the Note, co-debtors agreed to constitute a first mortgage over the Property.

15. The legal description of the Property, as it appears in the Property Registry in the Spanish language, encumbered by mortgage was included at page 27 of the Deed of Mortgage:

> "Rústica: Solar marcado con el número tres (3) en el barrio San Salvador del municipio de Caguas, Puerto Rico, compuesta de mil cuatrocientos ochenta y ocho punto cero (1488.0000) metros cuadrados. En lindes por el NORTE, en una distancia de setenta y seis punto seis mil ochocientos noventa y tres (76.6893) metros, según plano con la Sucesión de Felipe Flores; por el SUR, con camino dedicado a Uso Público en una distancia de setenta y nueve punto cinco mil novecientos diecinueve (79.5919) metros; por el ESTE, con remanente de la finca principal, en una distancia de cincuenta y siete punto seis mil quinientos treinta y dos (57.6532) metros; y por el OESTE, con el solar número dos (2), en una distancia de cincuenta y uno punto cero ochocientos ocho (51.0808) metros.
>
> Finca número 52,829, inscrita al folio 160 del tomo 1,552 de Caguas, Registro de la Propiedad de Puerto Rico Seccion Primera de Caguas."

16. On December 23, 2008, the mortgage was presented for recordation at the First Section Caguas of the Puerto Rico Property Registry pursuant to entry 263-1145-CA01.

17. At all relevant times, the Property has been owned by Debtor and title is recorded in his name.

18. BPPR is the current holder of the Mortgage Note.

19. Debtor was aware that BPPR acquired the Mortgage Note and mortgage.

20. On May 19, 2017, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code.

21. On October 2, 2019, Debtor filed "Schedule D: Creditors who have claims secured by Property." Debtor declared in Schedule D that no entity held secured claims against the bankruptcy estate.

22. In Schedule E/F, Part 3, Item 5, Debtor declared that BPPR, a nonpriority creditor, held an unsecured claim on an account number 6960.

23. Debtor declared, under penalty of perjury, in the Statement of Intention for Individual filing under Chapter 7 Official Form 108, Part 1 that no entities had a secured claim against the bankruptcy estate.

24. On July 18, 2017, BPPR filed a Motion for Relief from Stay in case 17-03532, in which it claimed that it had a secured interest over debtor's real property.

25. BPPR attached to its motion for relief of stay the following exhibits: (1) copy of a verified statement of account issued by BPPR that included pre and post-petition arrears of the mortgage loan; (2) copy of the endorsed Mortgage Note executed by Debtor and co-debtors before a Notary Public; (3) a copy of the Mortgage; (4) an unsworn title report of the Property prepared by Eagle Title & Other Services Inc. in the Spanish language; and (5) a SCRA certification.

26. According to the unsworn title report prepared by Eagle Title & Other Services Inc., dated June 22, 2017, and attached to Docket No. 10 of the legal case, the legal description of the Property under evaluation was:

> "Rústica: Solar marcado con el número tres (3) en el barrio San Salvador del municipio de Caguas, Puerto Rico, compuesta de 1,488.00 metros cuadrados. En lindes por el NORTE, en una distancia de 75.6893 metros, según plano con la Sucesión de Felipe Flores; por el SUR, con camino dedicado a Uso Público en una distancia de 79.5919 metros; por el ESTE, con remanente de la finca principal, en una distancia de 57.6532 metros; y por el OESTE, con el solar número dos (2), en una distancia de 51.0808 metros.
>
> Finca número 52,829, inscrita al folio 160 del tomo 1,552 de Caguas, Registro de la Propiedad de Puerto Rico Sección Primera de Caguas."

27. On August 29, 2017, Plaintiff submitted in the lead case an updated title report of the Property, in the Spanish language, dated August 18, 2017.

28. Debtor has not made payments to BPPR under the Mortgage Note since April 2017.

**Position of the Parties**

*Defendant/Debtor*:

The Defendant argues that as of the date of the filing of the Debtor's bankruptcy petition, BPPR did not have a valid registered lien on Debtor's real property. The Debtor argues that the recordation was performed on another property number based upon the following: (i) as of the date of the filing of the petition, Debtor's attorney requested and obtained a Title Report dated May 19, 2017 and issued by Luz Castro Colón that discloses that the property was free and clear of liens and encumbrances (Refer to Docket No. 49, Exhibit 2). The Debtor/Defendant listed Plaintiff as an unsecured claimant and all pertinent information was submitted with the Chapter 7 petition, schedules, means test, statement of financial affairs, correctly related to the information resulting from the Property Registry as to his real property and creditors; (ii) pursuant to the entry note ("asiento 263 diario 1145") made by the Property Registry concerning the filing ("presentación") of the mortgage deed number 729, the same was filed for recordation of a mortgage lien on property number 52,552; (iii) the Plaintiff in its motion for relief from the automatic stay filed with the court a Title Study dated June 22, 2017 that discloses that the mortgage deed number 729 did not appear filed or recorded at the Property Registry. The mortgage deed number 729 was not included as a lien in this title report. (Lead Case, Docket No. 10, pgs. 40-41); (iv) mortgage deed number 729 was recorded under Law 216 of December 27, 2010, encumbering property number 52,552, a real property located at La Serrania Development Lot 64D, pertaining to Israel Álvarez Rodríguez and María D. Camacho Velazquez; (v) "Law 216 in effect abolished the requirement of having the Registrar to review the documents (known in Spanish as 'calificar') that were pending inscription on or before April 30, 2010. Consequently, none of the registrars will be issuing any notices of defects for documents that fall under Law 216 review" In re Ramos, 493 B.R. 355, 368 (Bankr. D.P.R. 2013).

The Property Registrar in this case proceeded to record mortgage deed number 729 without issuing any notice for defects; (vi) once the Debtor filed his bankruptcy petition, the automatic stay and subsequently, the discharge order, prevented BPPR from recording its mortgage deed number 729 in the Registry, "which action was done by Plaintiff with the ultimate purpose of illegally collecting a discharged debt by creating a post-discharge lien on the Property in violation of the discharge injunction under Section 524 of the Bankruptcy Code" (Docket No. 49, pgs. 12-13); (vii) Plaintiff's contention that its mortgage deed number 729 was also recorded on the Property, results in a situation of "multiple or simultaneous recordings" of the same

mortgage deed on two different real properties, which proposition is legally unsustainable; (viii) "although no notice of defects was issued by the Property Registrar, the recorded certified copy of the mortgage deed 729 was returned to the Notary Public with a Registry note stating that the same was recorded on property number 52,552 and neither the Plaintiff nor the Notary Public requested a pre-bankruptcy petition correction of the erroneous recordation;" (ix) pursuant to the Real Property Registry Act, 30 L.P.R.A. §§2501 and 2502, the rectification made by the Property Registrar when he/she recorded the mortgage lien on the Property had to be previously notified to the Defendant and/or a judicial resolution ordering the rectification was required. The Defendant was not notified of said correction or rectification and neither did the Property Registrar move for a judicial resolution ordering said recordation; and (x) "…the post-discharge recording of a mortgage lien on the property is an invalid action by the Property Registry and since the same was procured by the Plaintiff, the same is a violation of the discharge injunction in the present case." (Docket No. 49).

The Defendant in its *Reply to BPPR's Motion for Summary Judgment* argued that the only argument from the Plaintiff the Court should consider is that the Property Registrar's certification on the record excludes the chronological facts surrounding the initial recording of the Plaintiff's Mortgage Deed number 729 on property number 52,552 and the post-discharge recordation in the property. The Plaintiff's posture of proposing the exclusion of the chronological sequence of facts at the Registry denies an equitable fairness in deciding the present controversy. The Defendant attached a Title Study dated August 18, 2017 rendered by Eagle Title And Other Services, Inc. translated to the English language (Docket No. 51).

**BPPR**:

BPPR's position is that the real estate property, owned by the Defendant, and that served as collateral for the loan was subject to a valid mortgage lien as evidenced by the mortgage and which conferred BPPR status as a secured creditor on the filing date. (Docket No. 50, pg. 3). BPPR argues that: (i) the Order denying the motion for relief from the automatic stay does not constitute a ruling on the merits of its secured lien, as Defendant only requested in its prayer to the Court "to deny the motion for relief from automatic stay filed by BPPR, docket #10." The Court's Order denying BPPR's request for relief from the automatic stay cannot be interpreted as an adjudication on the merits of the causes of action in the complaint of this adversary proceeding; (ii) "[a]ccording to the official certification from the Registrar the Mortgage was recorded by the

Registrar pursuant to Law 216, as abbreviated entry No. 7 over the Property (Docket No. 45-4, p. 6). Furthermore, the Karibe[1] pages of the Registry were translated to reflect the abbreviated entry, and in the official records of the Registry show that property number is 52,829 (Docket 45-8). There is nothing on the record to reflect that any of Law 216's enumerated exceptions applied to the Mortgage" (Docket No. 50, pg. 24); (iii) Defendant's allegation that the mortgage was mistakenly presented as a lien over property #52,552 is based on two (2) Spanish language private title studies dated May 19, 2017 and September 1, 2017. Defendant's claim is not based on the official receipt provided by the Registry; (iv) "[t]here is no evidence on the record that the Registrar made an error in recording the Mortgage following Law 216. Based on Law 216, the Mortgage was recorded by operation of law on February 10, 2011 (45 days after December 27, 2010), the effective date of the law. The abbreviated registration made in 2018 is the culmination of what happened on February 10, 2011 by Legislative order;" (Docket No. 50, pg. 24); (v) the Defendant's documents are in the Spanish language and because they were not translated into English this Court may not consider them as evidence. Therefore, the Defendant has presented no evidence to rebut Law 216's "presumption of valid recordation;" (vi) the Defendant has not provided to the Court a Registry certification to validate its claim of non-existence of BPPR's mortgage lien. This is required by sections 2105 and 2106 of the Mortgage Law, 30 L.P.R.A. §§2105-2106. "Defendant's failure to submit in evidence a valid certification issued by the Registrar proving the inexistence of a valid mortgage lien indexed against the Property, and BPPR's submission of a certification issued by the Registry showing the Mortgage as a lien over the Property establishes the presumption of valid recordation under Law 216. Docket 45-4 at p. 2. Therefore, this Court can determine that Banco Popular's secured mortgage lien is superior in relation to third parties as prescribed by the "first in time, first in right" adage, or to even conclude that the mortgage lien exists and affects property 52,829" (Docket No. 50, pg. 27); (vii) "[a]lthough those initial title reports could have misled the Defendant to believe that no mortgage deed was pending registration or as he alleges presented in the incorrect property, the reality of the Registry, and his failure to obtain an official certification from the Registrar was at his peril;" (Docket No. 50, pg. 27); and (viii) "Defendant's sole remedy was to seek to correct the books of the Registry as permitted by Law 216" pursuant to the Mortgage Law & Property Registry Act."

---

[1] Karibe is the digital platform which allows for one data base for Property Registry records, the Real Property Digital Registry Of Puerto Rico (Registro Inmobiliario Digital de Puerto Rico) pursuant to Laws 209 and 210 of December 8, 2015.

"The Defendant did not pursue such remedy to set aside the inscription or overcome the presumption of the appropriate inscription under Law No. 216 nor would he have had the legal basis to do [so]." (Docket No. 50, pgs. 27-28).

BPPR also filed a *Motion in Opposition to Defendant's Motion for Summary Judgment* in which it restated that the Defendant has not disputed with any admissible evidence that the Registrar of the Property recorded the mortgage at inscription 7 under an abbreviated entry under property number 52,829 (Docket No. 52).

## Applicable Law and Legal Analysis

### *Standard for Motion for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure is applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056; *see also*, In re Colarusso, 382 F.3d 51 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." Wright, Miller & Kane, Federal Practice and Procedure, 3d, Vol 10A, § 2712 at 198. "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. at 202-203. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. Id. at 205-206.

Summary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute, thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). When considering a petition for

summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. Adickes v. Kress & Co., 398 U.S. 144, 157 (1970). See also López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991). It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), cert. denied, 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial. López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. Celotex, 477 U.S. at 325. See also, Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). See also, Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159.

For the reasons explained below, this court denies the Defendant's Motion for Summary *Motion Judgment* and grants the Plaintiff's' *Motion for Summary Judgment.*

***Procedural requirement of lien avoidance pursuant to Fed. R. Bankr. P. 7001(2) and extent of discharge pursuant to 11 U.S.C. §524(a)***

At this juncture, the Court wants to clarify certain matters. The first matter is BPPR's argument that the Defendant's documents are in the Spanish language and because they were not

translated into English this Court may not consider them as evidence. Therefore, the Defendant has presented no evidence to rebut Law 216's "presumption of valid recordation" and the Defendant's allegation that the mortgage was mistakenly presented as a lien over property #52,552 based on two (2) Spanish language private title studies dated May 19, 2017 and September 1, 2017. Defendant's claim is not based on the official receipt provided by the Registry. Thus far, neither party has submitted to the court copy of the Property Registrar's official receipt ("asiento de presentación") of the mortgage. The Defendant submitted with its motion for summary judgment an English translation of the title studies dated May 19, 2017 and September 1, 2017 (Docket No. 49, pgs. 27 & 28). The Defendant also submitted a certified English translation of the title study dated August 18, 2017 that BPPR requested and submitted in its motion for relief from the automatic stay (Docket No. 51, pgs. 8-10; Lead case, Docket No. 18, Exhibit I).

The second matter is whether an Order denying a motion for relief from the automatic stay constitutes a ruling on the merits of a secured interest. BPPR's prayer in the *Motion in compliance with Court Order (Docket No. 15)* was the following: "[w]herefore, Banco Popular respectfully requests that this Honorable Court take notice of the compliance with its Order of August 15, 2017 and that it has a secured interest in support of its *Motion for Relief of Stay*. Therefore, Banco Popular further moves this Honorable Court to grant its *Motion for Relief of Stay* (Lead case, Docket No. 18). The prayer in the Debtor's *Motion in Compliance with Order, Docket #15 Re: Debtor's Opposition to Banco Popular de Puerto Rico's Motion in Compliance with Court Order (Docket No. 15)* was the following: "[w]herefore, debtor respectfully requests from this Honorable Court to deny the motion for relief from automatic stay filed by BPPR, docket #10" (Lead case, Docket No. 22). The Court's order stated the following: "Debtor's motion in compliance with order and requesting that the motion for relief from automatic stay filed by Banco Popular de PR be denied (docket #22) is hereby granted." (Lead case, Docket No. 24).

On April 30, 2021 at the pre-trial hearing the Court held the following:

"The court concludes that a hearing on a motion to lift the stay is limited in scope and is a summary proceeding to determine if movant has a colorable claim over property of the estate and is not a determination of substantive rights. In re Grella, 42 F. 3d. 26, 30 (1st Cir. 1994); In re Old Cold, 602 B.R. 798, 825 (1st Cir. BAP 2019); In re Nelson, 621 B.R. 542, 555 (1st Cir. BAP 2020)."(Docket No. 47).

The court finds that this legal issue has already been adjudicated. The court further concludes that the denial of the motion for relief of stay had no effect on the determination of the validity or extent of the lien given that this proceeding is limited in scope and is not procedurally adequate to determine the validity of the lien over the Debtor's property. If the Debtor's intention was to seek a determination to void the lien, he was procedurally required to file an adversary proceeding. See Morales v. Select Portfolio Servicing, Inc., (In re Morales), 607 B.R. 16, 24-25 (Bankr. D.P.R. 2019).

The Debtor had to file an adversary proceeding in the present case to question the validity and extent of BPPR's mortgage on its property. Fed. R. Bankr. P. 7001(2) requires the commencement of an adversary proceeding "to determine the validity, priority, or extent of a lien or other interest in property." Fed. R. Bankr. P. 7001(2). In the lead case, the Debtor did not commence an adversary proceeding to determine the extent and validity of BPPR's lien which was a detrimental position to assume because it is in conflict with the general principle that in bankruptcy, secured creditors are not required to file a claim (unless they want to participate in the distribution if there are assets to liquidate in a chapter 7) because their liens pass through unaffected. See Dewsnup v. Timm, 502 U.S. 410, 418, 116 L. Ed. 2d 903, 112 S. Ct. 773 (1992). "It is hornbook law that a valid lien survives a discharge in bankruptcy unless it is avoidable, and the debtor takes the proper steps to avoid it." Holloway v. John Hancock Mut. Life Ins. Co. (In re Holloway). 81 F. 3d 1062, 1063 (11th Cir. 1996). The debtor must file an adversary proceeding if the debtor intends to extinguish or modify a lien or other interest in property. See Cen-Pen Corp. v. Hanson, 58 F. 3d 89, 92-93 (4th Cir. 1995), referencing Lee Servicing Co. v. Wolf (In re Wolf), 162 Bankr. 98, 107 n.14 (Bankr. D.N.J. 1993); In re Glow, 111 Bankr. 209, 221 (Bankr. N.D. Ind. 1990).

Section 727(a) provides for the grant of a discharge to debtors and section 727(b)[2] provides that the effect of a discharge is to free the debtors from all debts and claims that arose pre-petition. 11 U.S.C. §§727(a), (b). The effect of a discharge pursuant section 524(a) is that it operates as an injunction against *in personam* claims against the debtor that were discharged pursuant to 11 U.S.C. §727. 11 U.S.C. §524(a). Thus, a bankruptcy discharge extinguishes only

---

[2] Section 727(b) provides: "[e]xcept as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title." 11 U.S.C. §727(b).

-16-

*in personam* claims against the debtor, but generally has no effect on an *in rem* claim against the debtor's property. See Johnson v. Home State Bank, 501 U.S. 78, 84, 115 L. Ed. 2d 66, 111 S. Ct. 2150(1991) ("Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim -- namely, an action against the debtor *in personam* -- while leaving intact another -- namely, an action against the debtor *in rem*"). See also; Arruda v. Sears, 310 F. 3d 13, 21 (1st Cir. 2002). Therefore, a defaulting debtor can protect himself from personal liability by obtaining a discharge in a Chapter 7 liquidation. See 11 U.S.C. §727. The discharge extinguishes only the personal liability of the debtor pursuant to 11 U.S.C. §524(a)(1). Moreover, section 11 U.S.C. §522(c)(2)[3] provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy.

The lienholder does not have an affirmative duty to assert its *in rem* rights prior to the debtor obtaining a discharge. See Farrey v. Sanderfoot, 500 U.S. 291, 291, 114 L. Ed. 2d 337, 111 S. Ct. 1825 (1991). This concept is consistent (is in alignment) with the provisions of the automatic stay that will generally prevent a creditor from attempting to take possession of any property of the debtor's estate before the discharge is obtained (unless the stay is lifted). See Arruda v. Sears, 310 F. 3d 13, 21 (1st Cir. 2002).

Therefore, unless the debtor takes the necessary legal action to avoid a security interest in the debtor's property during the bankruptcy process, that property will remain subject to the security interest/lien following the debtor's discharge pursuant to 11 U.S.C. §727. In the instant bankruptcy case, the debtor did not file an adversary proceeding pursuant to Fed. R. Bankr. P. 7001(2) for the court to determine the extent and validity of BPPR's secured interest in Debtor's real property. Thus, in the instant case the secured claimant's *in rem* rights against the debtor's property survived the debtor's discharge and BPPR's right to foreclose on the mortgage survived (passed) through the bankruptcy unaffected. Consequently, the court finds that a lienholder/mortgage holder (secured creditor) does not violate section 524(a) by asserting its *in rem* rights after a bankruptcy case has been closed and a debtor has been granted a discharge. See Arruda v. Sears, 310 F. 3d 13, 21 (1st Cir. 2002).

---

[3] Section 522(c)(2) provides: "[u]nless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—
    (2) a debt secured by a lien that is—
    (A) (i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and
        (ii) not void under section 506(d)." 11 U.S.C. §522(c)(2).

### *Probative value of Property Registrar certifications vis-à-vis title studies*

"Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." Butner v. United States, 440 U.S. 48, 99 S. Ct. 914, 918, 59 L. Ed. 2d 136, 141-142 (1979).

The first question that must be answered is which mortgage law is the one that applies to the instant case. The court notes that the Mortgage and Property Registry Act of 1979, 30 L.P.R.A. §§2001 et seq., was repealed on December 8, 2015 by Act Number 210 which is titled, "Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico" (Real Property Registry Act of the Commonwealth of Puerto Rico) (translation ours). [4] Article 322 of the Real Property Registry Act of the Commonwealth of Puerto Rico establishes that this new law would become effective ninety (90) days after its approval, that is on March 7, 2016. Pursuant to the Karibe documents the mortgage deed was presented to the Property Registrar for review ("calificación") on December 23, 2008, therefore this court concludes that the applicable law pertaining to the presentation, the registration that relates back to the date of the presentation and the error that was allegedly corrected *motu propio* by the Property Registrar is the Mortgage and Property Registry Act of 1979, 30 L.P.R.A. §2001 et seq.  ("PR Mortgage Law"). However, this court concludes that Law 210 of December 8, 2015 which is "Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico" (Real Property Registry Act of the Commonwealth of Puerto Rico) (hereinafter referred to as the "Real Property Registry Act") and Regulation number 8814 as, amended, "General Regulations for the Execution of the Real Property Registry Law of the Commonwealth of Puerto Rico" ("Reglamento General para la Ejecución de la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico") apply to the certification issued by the Property Registrar of Puerto Rico given that the same was rendered on August 23, 2019 (Docket Nos. 1-5 & 45-4, pg. 2).

The Karibe documents are not an official certification from the Property Registrar. The court notes that the Property Registrar certification does not disclose the date that mortgage deed number 729 was presented to the Property Registrar (Docket Nos. 1-5, & 45-4, pg. 2). However,

---

[4] No official translation in the English language of this Act is available as of the entry of this Opinion and Order. Article 322 of the Real Property Registry Act of the Commonwealth of Puerto Rico ("Real Property Registry Act") establishes that this act shall take effect ninety (90) days after its approval.

-18-

the parties agree that mortgage deed number 729 was presented to the Property Registrar on December 23, 2008. The Defendant in his motion for summary judgment has alleged that, "[a]fter the order of discharge was entered by the Bankruptcy Court in favor of the Debtor, Plaintiff procured from the Property Registry and the Property Registrar withdrew from property number 52,552 (the Serrania Development property) the mortgage deed number 729 and that the same was recorded against the property." (Docket No. 49, pg. 7, par. 29). The Defendant also alleged that, "Plaintiff procured the post-discharge recordation at the property Registry of deed number 729 on the Property on the grounds that since mortgage deed number 729 had been recorded under Law #216 of December 27, 2010, a law created to speed up the pending documents at the Registry, and the recordation of deed number 729 on property 52,552 was an 'error', the Law allows the Property Registrar to handle this type of 'errors' by internally correcting or rectifying the same" (Docket No. 49, pgs. 7-8, par. 30). However, the Defendant did not submit any evidence to the court to substantiate these allegations. No evidence was submitted that the Plaintiff filed an "Instancia" or any other document before the Property Registrar procuring the post-discharge recordation. Also, the Defendant did not submit a certification from the Property Registrar evincing that the Registrar had corrected an error.

In Puerto Rico, it is a well-established principle that mortgages are constitutive in nature, meaning that for the same to be validly constituted, it must be executed through a public deed before a notary and be recorded at the Property Registry. See Articles 182[5] and 188[6] of the PR Mortgage Law, 30 L.P.R.A. §§2601 and 2607[7] and Article 1774 of the Puerto Rico Civil Code, 31 L.P.R.A. §5042.[8] The new Civil Code of Puerto Rico became effective on November 28,

---

[5] Article 182 of the PR Mortgage Law provides: "[v]oluntary mortgages are those agreed to between parties, or imposed by order of the owner of the properties or rights on which they are constituted, and may only be established by those having free disposal of these properties or rights, or, if they do not have it, they do have the legal authority to do so." 30 L.P.R.A. §2601.

[6] Article 188 of the PR Mortgage Law provides: "In order for voluntary mortgages to be validly constituted, it is required:

First.— That they be stipulated in a deed.

Second.— That the document be recorded in the Property Registry." 30 L.P.R.A. §2607.

[7] Under the new Real Property Registry Act, article 57 is the equivalent article, 30 L.P.R.A. §6084.

[8] Article 1774 of the prior PR Civil Code provides: "Besides the requisites mentioned in § 5001 of this title, it is indispensable, in order that the mortgage may be validly constituted, that the instrument in which it is created be entered in the registry of property.

The persons in whose favor the law creates a mortgage shall have no other right than to demand the execution and entry of the instrument in which the mortgage may be constituted, without prejudice to the provisions of the Mortgage Law, in favor of the Commonwealth of Puerto Rico and of the municipalities, for the amount of the last year's taxes, and in favor of the underwriters for the premium of the insurance." 31 L.P.R.A. §5042.

-19-

2020.[9] See also <u>Rosario Pérez v. Registrar</u>, 115 D.P.R. 491 (1984), 15 P.R. Offic. Trans. 644, 648 (1984) (For mortgages under the mortgage law of Puerto Rico, "recordation is a constitutive act through which the security produces real effects and becomes operative *erga omnes* in the sphere of real rights." <u>Rosario Perez v. Registrar</u>, 115 D.P.R. 491 (1984), 15 P.R. Offic. Trans. 644, 648 (1984); <u>Pérez Mújica v. FirstBank, P.R.</u> (<u>In re Pérez Mújica</u>), 457 B.R. 177, 188 (Bankr. D.P.R. 2011). Article 53 of the PR Mortgage Law provides:

> "[r]egistered titles shall become effective for third parties from the date of their registration. For all intents and purposes, the registration date, including the determination of the term needed for cancellation of entries, must appear in the registration itself."

> In order to determine preference between two or more registrations of the same property, attention shall be given to the date, hour and presentation number of the respective titles in the Registry. 30 L.P.R.A. §2256.[10]

Article 218 of the Real Property Registry Act provides:

> "[c]ertifications include the content of the entries that are in the Registry. Registrars are the only officials that have the faculty to certify the content of the entries in the registries. The certifications issued are public documents that give faith by themselves, and as such, are admitted as evidence before the courts pursuant to the Rules of Evidence." (translation ours) 30 L.P.R.A. §6361.[11]

Article 219 of the Real Property Registry Act provides:

> "[u]pon a written request from an interested party or by virtue of an order of the court, the registrars may render the following two types of certifications:
> 1.  A study and the relation with the other entries that are current.

___

[9] Article 1014 is the equivalent article under the new Civil Code of Puerto Rico. Article 1014 provides in the Spanish language: "[p]ara que la hipoteca quede válidamente constituida es indispensable que el instrumento en que se constituya se inscriba en el Registro de la Propiedad, excepto cuando la ley la reconoce como tácita." 31 L.P.R.A. §8734.

[10] The equivalent of this article under the Real Property Registry Act is Article 19 which provides:
"Recorded titles will take effect with respect to third parties from the date of their recordation. The recordation date will be considered, for all purposes that the latter should produce, even to determine the term necessary for the cancellation of entries, the date of the presentation which must appear in the recordation itself. The rank or preference between two (2) or more entries relating to the same property will depend on the date, time, and number of the presentation entry in the Registry of the respective titles. A recorded title may be postponed in favor of another always with the express consent, through public deed, of the holders and/or creditors whose title or credit is affected, if any." 30 L.P.R.A. §6034.

[11] Article 27 is the equivalent article under the PR Mortgage Law, and it reads as follows: "[c]ertifications issued by the Registrars are public documents and, as such, may be considered evidence in their own right." 30 L.P.R.A. §2105.

2. Negative certifications." 30 L.P.R.A. §6362.[12]

Article 222 of the Real Property Registry Act provides:

"[t]he existence or absence of liens on real property or real rights can only be prejudicial to third parties when certified by the Registry. However, when certifications issued by the Registrars do not conform to the Registry entries, said entries in the Registry shall be held valid." 30 L.P.R.A. §6365.[13]

Article 223 of the Real Property Registry Act provides:

"The procedure for requesting certifications, what they should include and how they shall be rendered will be in conformity with the regulations. From the effective date of this Law, all the certifications will be issued digitally and via electronic means and authenticated pursuant to Law 148-2006, as amended and known as the "Law of Electronic Transactions." 30 L.P.R.A. §6366.[14]

Article 302 of the Real Property Registry Act provides:

"[t]he registration certificate issued and signed by a Property Registrar shall be understood as an official document." 30 L.P.R.A. §6531.

A Property Registrar's certificate is *prima facie* evidence of the facts stated in the records of the registry of property and mentioned in the certificate and those facts may be challenged by other evidence contradicting or overcoming them. <u>Pueblo de Puerto Rico v. Ocean Park Dev. Corp.</u>, 73 P.R.R. 345, 73 D.P.R. 360 (1952). "...A certification issued by a Property Registrar is a public document admissible as evidence and with the same effect of the original document. They constitute *prima facie* evidence of the facts contained therein, which may be challenged by different evidence that contradicts it." Luis Rafael Rivera Rivera, <u>Derecho Inmobiliario Registral</u>

---

[12] Article 24 is the equivalent article under the PR Mortgage Law and it reads as follows: "[t]he Registrars shall issue literal, brief, partial or negative certifications of the different registry entries upon a written request by anyone stating an interest in ascertaining the legal status of any real property or right in question, or by virtue of an order of the court. A certification may be requested electronically, and it may be issued through the same channel, and authenticated as provided in the Digital Signatures Act, §§ 1031 et seq. of Title 3, provided that the information system is operating." 30 L.P.R.A. §2102.

[13] Article 28 is the equivalent article under the PR Mortgage Law, and it reads as follows: "[t]he existence or absence of liens on real property or real rights can only be prejudicial to third parties when certified by the Registry. However, when certifications issued by the Registrars do not conform to the Registry entries, said entries in the Registry shall be held valid and predominant." 30 L.P.R.A. §2106

[14] Article 30 is the equivalent article under the PR Mortgage Law and it reads as follows: "[t]he procedure for requesting certifications, what they should include, or have, how they shall be made out and issued, and the manner and fashion in which the Administrative Director must act regarding the complaints that are filed, shall be determined by regulations.
In the case of requests received electronically, the directions for obtaining certifications, and for the payment of fees shall be stated in the operational regulations." 30 L.P.R.A. §2108.

Puertorriqueño, p. 80 (3d ed. 2012). <u>Miranda v. Banco Popular de PR</u> (<u>In re Miranda</u>), 2013 Bankr. Lexis 5406, *6 (Bankr. D.P.R. 2013) was an adversary proceeding initiated by the debtors pursuant to Fed. R. Bankr. R. 7001(2) to determine the validity of a mortgage lien over their property. The court in <u>In re Miranda</u> determined, "… that a title search is less credible evidence than a certification that has been issued directly by a Property Registrar. When met with an authentic public document like a certification from a Property Registrar, the title search, by its nature, cannot be granted greater probative value" and granted the Defendant's (bank/secured creditor's) request for summary judgment. <u>In re Miranda</u>, 2013 Bankr. Lexis. 5406, *6.

In the instant case, mortgage deed number 729 was presented for recordation at the Property Registry. The mortgage deed was not notified as defective by the Property Registrar or withdrawn. The Property Registrar's certification evinces that said mortgage deed is registered under the debtor's property (number 52,829) as the seventh inscription under an abbreviated entry. The Defendant/ Debtor did not submit to the court a certification from the Property Registrar that counters this position and thus, evinces that the Property Registrar made an error or that the mortgage lien is registered under a different property number or proves that the Property Registrar's certification is deficient. (A deficient certification does not alter the entries in the Registry). The title studies cannot be granted greater probative value. Most importantly, the Debtor was required to file an adversary proceeding to determine the validity of BPPR's mortgage lien pursuant to Fed. R. Bankr. P. 7001(2). Given Debtor's inaction in asserting his alleged legal rights, the secured claimant's *in rem* rights against the property survived the debtor's discharge pursuant to section 727.

### Conclusion

In view of the foregoing, the motion for summary judgment filed by plaintiff is granted and the motion for summary judgment filed by defendant is denied. Judgment will be entered in favor of plaintiff declaring that it has a valid lien over the debtor's property and may enforce its *in rem* rights over the same.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 16th day of August 2021.

Enrique S. Lamoutte
United States Bankruptcy Judge

-22-